IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LARRY COLE,

    Plaintiff,

v.                                                                           Civ. No. 23-137 GBW/JHR

CIBOLA COUNTY BOARD OF
COUNTY COMMISSIONERS, *et al.*,

    Defendants.

**ORDER GRANTING MOTION TO DISMISS**

THIS MATTER comes before the Court on Defendant Warden Miller's Motion to Dismiss Plaintiff's First Amended Complaint. *Doc. 31*. Having reviewed the Motion and the attendant briefing (*docs. 34, 35*), and being fully advised regarding relevant case law, the Court will GRANT the Motion.

**I.**     **BACKGROUND**

Plaintiff filed the operative First Amended Complaint for the Recovery of Damages Caused by the Deprivation of Civil Rights on August 31, 2023, *doc. 16*, which alleges 8th and 14th Amendment claims against Cibola County Board of County Commissioners, CoreCivic, Inc., CoreCivic of Tennessee, LLC (collectively, "County Defendants"), Cibola County Correctional Facility, various John Doe Defendants, and Warden Chad Miller. The County Defendants, Cibola County Correctional Facility, and the John Doe Defendants have since been dismissed from the case. *Docs. 27, 30*. The

1

remaining defendant, Defendant Miller, moves to dismiss all remaining claims against him in the instant Motion to Dismiss ("Motion"), filed on April 3, 2024. *Doc. 31*. Plaintiff filed a response to the Motion on March 20, 2024, *doc. 34*, and the Motion was fully briefed on April 3, 2024, with the filing of the Defendant's reply, *doc. 35*.

In his First Amended Complaint, Plaintiff alleges that he received inadequate medical care for injuries sustained after two falls that occurred in early 2019 while he was incarcerated at the Cibola County Correctional Center (the "facility"). *See doc. 16* ¶¶ 15-44. After his falls, Plaintiff complained to guards and medical providers at the facility about his injuries and pain. *Id.* ¶ 26. In response to his complaints, Plaintiff "was taken to the medical facilities" at the facility and "advised by the physician in the facility that he may need spine surgery" and other more complex medical and diagnostic procedures than were available at the facility. *Id.* ¶¶ 29-30, 32. In addition, a treating physician at the jail informed Plaintiff that she requested that Plaintiff be transported outside of the prison for an MRI, but this request "was denied for financial reasons." *Id.* ¶ 31. Plaintiff "continued to complain to the staff and medical providers that he was in pain and injured" and that he was unable to walk, but "Plaintiff's requests for outside medical evaluation and treatment . . . were denied." *Id.* ¶¶ 36, 40, 44. Although a physician at the facility recommended that Plaintiff use a wheelchair, Plaintiff was initially denied use of a wheelchair. *Id.* ¶ 42. Even after he received a wheelchair, the "facility was not wheelchair accessible." *Id.* ¶¶ 43, 45. Plaintiff also

alleges that after his sister made calls to the Governor of New Mexico in order to seek better treatment for Plaintiff, Plaintiff was threatened with violence by one of the guards at the facility, and Plaintiff was beaten up by other inmates. *Id*. ¶ 46-47.

Plaintiff makes four specific allegations against Defendant Miller. First, Plaintiff alleges that his falls in early 2019 were caused by flooding in the facility and that the flooding was a "recurring and known problem to . . . Defendant Chad Miller." *Id.* ¶ 22. Next, Plaintiff alleges that Defendant Miller "denied Plaintiff the use of a wheelchair" after one was recommended by the facility physician. *Id.* ¶ 42. Plaintiff also alleges that Defendant Miller denied "Plaintiff's requests for outside medical evaluation and treatment as recommended by the physician within the facility . . . in reckless disregard for Plaintiff's health and safety." *Id.* ¶ 44. Finally, Plaintiff alleges that he was "physically beat up . . . by other inmates that he believes were instigated to retaliate against him by Defendant Chad Miller" and other facility personnel. *Id.* ¶ 47.

Based on these factual allegations, Plaintiff brings one count for violations of Plaintiff's 8th and 14th Amendment rights pursuant to § 1983. *Id.* ¶ 54. The Court notes that Plaintiff does not mention Defendant Miller in the description of the count and thus does not technically bring any legal claims against Defendant Miller.[1] Defendant Miller identified this problem in his Motion, *see doc. 31* at 8, and Plaintiff declined to respond,

---

[1] Count 1, Plaintiff's sole count, reads as follows: "COUNT 1: §1983 – VIOLATION OF 8TH and 14TH Amendments . . . As against Defendants Core Civic, Inc., Core Civic of Tennessee, LLC, Cibola County Board of County Commissioners." *See doc. 16* at 6.

*see generally* doc. 34. Nevertheless, the Court will assume that Plaintiff intended to bring 8th and 14th Amendment constitutional claims pursuant to § 1983 against Defendant Miller in his individual capacity.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a 12(b)(6) motion, the court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723 (quoting *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)). However, the court need not accept the truth of any legal conclusions. *Iqbal*, 556 U.S. at 678.

The plausibility standard "does not impose a probability requirement." *Twombly*, 550 U.S. at 556. Rather, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The complaint must only be "enough to raise a right to relief above the

speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555.  However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct"; otherwise, the plaintiff has not shown entitlement to relief.  *Id*. at 679.

### III. ANALYSIS

#### A. Plaintiff Does Not Allege Facts Sufficient to Support an Eighth or Fourteenth Amendment Claim Against Defendant Miller

As a preliminary matter, the Court notes that Plaintiff attempts to "supplement[] his allegations" in the form of two affidavits from Plaintiff and Plaintiff's sister which are attached to his response to the instant Motion. *See doc. 34* at 2; *docs. 34-1, 34-2*.  When ruling on a motion to dismiss, a district court is "limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).  The Court "cannot review matters outside of the complaint." *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).  As a result, the Court bases its analysis solely on the facts alleged in Plaintiff's First Amended Complaint (*doc. 16*).

To prove a constitutional violation under the 8th or 14th Amendment[2] for a lack of proper medical treatment, Plaintiff must show that a jail employee "act[ed] or fail[ed] to act with deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer v. Brennan*, 511 U.S. 825, 836 (1970).  A finding of deliberate indifference requires that "both an objective and a subjective component" are met.  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The objective component asks whether the medical need faced by the prisoner was "sufficiently serious" such that it "has been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citations omitted).  The subjective prong of the deliberate indifference test requires a showing that the jail employee was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the employee actually "dr[e]w the inference" that serious harm would occur.  *Farmer*, 511 U.S. at 837.

As has been previously noted by this Court, Plaintiff's allegations likely satisfy the objective prong of the deliberate indifference test.  Plaintiff alleges that after two falls, he experienced "severe pain," and he was taken to medical facilities where he was

---

[2] In a previous Order, the Court explained that Plaintiff's 8th and 14th Amendment claims are redundant. *See doc. 30* at 6.  The 8th Amendment protects convicted individuals from inadequate medical care rising to the level of cruel and unusual punishment while the 14th Amendment protects pre-trial detainees from the same. *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020).  Plaintiff's amended complaint states that he was a pre-trial detainee. *Doc. 16* ¶ 15.  Regardless of his incarceration status, courts apply the same deliberate indifference standard to both types of claims. *Strain*, 977 F.3d at 989.  As explained below, Plaintiff cannot meet this standard, so both of his claims shall be dismissed.

6

"advised by the physician . . . that he may need spine surgery" as well as other medical services. *Doc. 16* ¶¶ 23, 29-32. After, he continued to complain about his pain and inability to walk. *Id.* ¶ 25-36. A back injury which has been "diagnosed by a physician as mandating treatment," is likely "sufficiently serious" to satisfy the objective prong of the deliberate indifference test. *Sealock*, 218 F.3d at 1209; *see Lamar v. Boyd*, 508 F. App'x 711, 714 (10th Cir. 2013) (unpublished) (declining to reexamine the lower court's determination that a slip and fall leading to a back injury met the objective test).

However, Plaintiff allegations regarding Defendant Miller's actions are not sufficient to meet the subjective prong of the deliberate indifference test. All of the allegations against Defendant Miller are conclusory at best. With respect to Plaintiff's allegations that Defendant Miller denied Plaintiff access to outside medical care or a wheelchair, Plaintiff provides no evidence that Defendant Miller had any contact with Plaintiff or the facility physician who treated Plaintiff, knew of Plaintiff's condition, or played any part in the decisions regarding Plaintiff's medical care. *See, e.g., Lee v. McKinley Cnty. Adult Detention Ctr.*, 2014 WL 12788056, at *9 (D.N.M. Sep. 9, 2014) (dismissing the complaint with respect to the warden defendant because the complaint "ma[de] no allegations that [the warden] had any contact with [the plaintiff] or made any decisions regarding her medical care, but instead relies on his status as warden to establish liability"). Similarly, Plaintiff fails to provide any evidence to support his conclusions that Defendant Miller knew about the water allegedly on the floor in

7

Plaintiff's pod that caused Plaintiff's injuries or that Defendant Miller encouraged other inmates to assault Plaintiff. Given that Plaintiff has not sufficiently alleged that Defendant Miller was even *aware* of the medical issues and risk faced by Plaintiff, Plaintiff certainly has not alleged that Defendant Miller "dr[e]w the inference" that serious harm would occur to Plaintiff. *Farmer,* 511 U.S. at 837. As a result, Plaintiff has not alleged facts to show that Defendant Miller acted with deliberate indifference toward Plaintiff.

### B. The Court Will Not Grant Plaintiff Leave to Amend

Plaintiff has not filed a motion seeking leave to amend his complaint a second time. Nor did he request leave to amend in his response to Defendant Miller's Motion. *See generally doc. 34.* In fact, he failed to respond in any way to Defendant's explicit argument that he be denied leave to do so. *See doc. 31* at 11. In this case, these circumstances are sufficient for the Court to deny exercising its discretion to *sua sponte* grant him leave to amend. *See Young v. Colorado Dep't of Corrections*, 94 F.4th 1242, 1256 (10th Cir. 2024). In the alternative, the Court would refuse to grant leave to amend because of Plaintiff's undue delay in adequately prosecuting his case. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citation omitted) (undue delay one basis for denying leave to amend).

First, allowing further amendments now would only add to the delays caused by Plaintiff. Plaintiff brought his original complaint in state court on February 22, 2022.

*Doc. 1-3*. After Plaintiff failed to take any action on the case for six months, the state court dismissed his case on August 31, 2022, *doc. 1-4* at 3, but reopened the case upon Plaintiff's motion on October 26, 2022, *id.* at 2. The County Defendants removed the case to federal court on February 14, 2023, *doc. 1*, and soon after moved to dismiss all of Plaintiff's claims against them, *doc. 3*. The Court granted the motion to dismiss, *doc. 15*, and permitted Plaintiff to file an amended complaint which he did on August 31, 2023, *doc. 16*. Plaintiff's First Amended Complaint added a new defendant, Defendant Miller, but Plaintiff again failed to serve this defendant in a timely manner.[3]  *See doc. 23*. In total, Plaintiff's failure to serve defendants has delayed this case by approximately eight months.

Second, it appears that any additional facts which Plaintiff would add to his allegations against Defendant Miller would have been known to him for quite some time. *See Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (denying "leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior" to the time at which the moving party seeks to make an amendment). As described above, Plaintiff included additional allegations in the form of affidavits from Plaintiff and Plaintiff's sister in his response to the instant Motion. *Docs. 34-1, 34-*2. To the extent that these facts are relevant to Defendant

---

[3] The deadline to serve Defendant Miller was November 29, 2023, but Plaintiff did not serve him until January 26, 2024, and only after prompting by the Court. *See docs. 23, 28*.

9

Miller's awareness of the medical issues that Plaintiff was experiencing, all of the allegations relate to incidents that happened to either Plaintiff or Plaintiff's sister in 2019, three years before the initial complaint in this case was filed. As a result, none of the supplemental allegations contained in the affidavit are new facts that were previously unavailable to Plaintiff. Plaintiff provides no explanation, and the Court sees no reason, for why Plaintiff could not have provided these facts in his original or amended complaint.

For all these reasons, the Court will not grant Plaintiff leave to amend his deficient amended complaint.

## IV. Conclusion

Based on the foregoing reasoning, Defendant Warden Miller's Motion to Dismiss Plaintiff's First Amended Complaint is GRANTED. Plaintiff's claims against Defendant Warden are DISMISSED WITHOUT PREJUDICE. The Court will enter a separate final judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**